UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES C. STEPHENS, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> US AIRWAYS GROUP, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 07-1264 (RMC) |

### MEMORANDUM OPINION

J.C. Stephens retired on December 1, 1996, as a pilot for US Airways. He did not receive his lump-sum distribution from his retirement plan until January 14, 1997. He unsuccessfully demanded interest on the withheld monies and eventually, with three similarly-situated former pilots,[1] sued US Airways Group, Inc. ("US Airways"). The district court in the Northern District of Ohio dismissed the suit and Plaintiffs appealed. US Airways then twice filed for bankruptcy protection and Plaintiffs' suit was stayed by the United States Court of Appeals for the Sixth Circuit. During the course of bankruptcy, the retirement plan was terminated and the Pension Benefit Guarantee Corporation ("PBGC" or the "corporation") became its statutory trustee. The Sixth Circuit reversed in part and remanded to the district court; PBGC argued that venue in the Northern District of Ohio was improper and the case was transferred to this Court.

PBGC[2] now moves to dismiss in part, arguing that it cannot be liable for any fiduciary

---

[1] Plaintiffs include James C. ("J.C.") Stephens, Floyd G. Stephens, Richard Mahoney, and Donald V. Nippert.

[2] Plaintiffs styled their Third Amended Class Action Complaint (the "Complaint") to name US Airways Group, Inc., as the lead Defendant. However, PBGC is the only Defendant named in the body of the Complaint, and is the sole Defendant in this case. US Airways received

breach on a mere claim for unpaid benefits, for attorneys' fees, or to pilots who received their lump-sum retirement benefits too long ago to be part of a putative class. *See* Def.'s First Am. Mot. to Dismiss Pls.' Third Am. Compl. ("Def.'s Mem.") [Dkt. # 5]. While this Court agrees on the first two points, it is premature to decide the last.

## I. BACKGROUND

US Airways was the contributing sponsor and plan administrator of the Retirement Income Plan for Pilots of U.S. Air, Inc. ("Plan"). Plaintiffs are four retired pilots of US Airways who seek to represent a class consisting of pilots who elected to receive a lump-sum payment of retirement benefits from the Plan between January 1, 1990 and December 31, 2003. They filed a complaint against US Airways and the Plan in the Northern District of Ohio on January 18, 2000, alleging that US Airways improperly delayed distribution of their lump-sum benefits for up to 45 days after the Plan's required date for commencing the payment of retirement income. The Plan required that lump-sum payment be made "commencing on the first day of the month coinciding with or next following [the] Normal Retirement Date."[3] Third Am. Compl. ("Compl.") ¶ 22. Alternatively, under the Plan, a participant entering into early retirement may have elected "to begin receiving this retirement income on the first day of any month between the date he retires from the employ of the Employer and his Normal Retirement Date." *Id*. ¶ 23. Thus, under the terms of the Plan, lump-sum payments were to be made on the "Actual Retirement Date," that is, the first day of the month coinciding with or following the participant's 60th birthday (or, alternatively, for

---

a discharge from liability for their debts in the Chapter 11 cases.

[3] The "Normal Retirement Date" is defined by the Plan "as the date on which the Participant attains his 60th Birthday." Compl. ¶ 22.

Participants electing early retirement, on the first day of any month elected by the Participant between the date he or she retired and the Normal Retirement Date). *Id.* ¶ 24. However, US Airways and the Plan "adhered to a policy of withholding the lump-sum payments for 45 days past the first day of the month coinciding with or following a pilot's retirement. This policy was enacted pursuant to an oral understanding with the Airline Pilots Association. Plaintiffs did not receive their lump-sum distributions until approximately 45 days after they were due." Pls.' Opp'n to Def.'s First Am. Mot. to Dismiss Pls.' Third Am. Compl. ("Pls.' Opp'n") [Dkt. # 6] at 2 (citing Compl. ¶¶ 32, 44, 53 & 62).

On July 25, 2001, the Northern District of Ohio granted US Airways' and the Plan's Motion to Dismiss on the basis of lack of subject matter jurisdiction; the district court held that each of Plaintiffs' claims required an interpretation of the Retirement Plan, which was a matter of exclusive jurisdiction for the Retirement Board.[4] Plaintiffs appealed to the Sixth Circuit, but US Airways filed the first of two bankruptcy petitions on August 11, 2002, and the Sixth Circuit stayed the case until US Airways emerged from its second bankruptcy proceeding in 2005.

In the meantime, pursuant to Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"),[5] and an agreement between US Airways and PBCG, the Plan was terminated effective March 31, 2003, because its assets were inadequate to pay its liabilities. On that

---

[4] The Retirement Board was created by US Airways and the Pilots Association pursuant to 45 U.S.C. § 184 of the Railway Labor Act, 45 U.S.C. § 151, *et seq*.

[5] *See* ERISA § 4002, codified at 29 U.S.C. § 1302. Title IV of ERISA, 29 U.S.C. §§ 1301-1461, governs the federal pension insurance program administered by PBGC. When a plan terminates without sufficient assets to pay its liabilities to participants and their beneficiaries, PBGC typically becomes statutory trustee of the terminated plan. Title I of ERISA, 29 U.S.C. §§ 1001-1191c, covers employee benefit rights and the administration of ongoing pension plans.

same date, PBGC became the statutory trustee of the Plan and is now paying its benefits, within the limits of Title IV. PBGC is also acting as the guarantor of Title IV benefits that the terminated Plan owes and will owe to participants and their beneficiaries.

PBGC's counsel was substituted as counsel for the Plan before the Sixth Circuit. On September 13, 2006, the appellate court affirmed the district court's ruling on two of the fiduciary breach counts and reversed on the remaining four counts. *See Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc.*, 464 F.3d 606 (6th Cir. 2006). On remand, Plaintiffs filed the Third Amended Class Action Complaint against PBGC as trustee of the Plan and as the alleged successor-in-interest to the Plan. PBGC filed a motion to dismiss, which included a contention of improper venue. The district court in the Northern District of Ohio ordered the case transferred to the United States District Court for the District of Columbia, without ruling on the merits.

In the Third Amended Complaint, Plaintiffs seek monetary damages, restitution and/or disgorgement, and attorneys' fees and costs against PBGC. The Complaint retains two unpaid benefit counts previously pending against US Airways and the Plan, now asserted against PBGC as successor-in-interest to the Plan (Counts I and II), and adds one co-fiduciary breach count against PBGC (Count III). In Count I, Plaintiffs allege that the Plan language required the distribution of a lump sum benefit on the participant's Actual Retirement Date. Compl. ¶¶ 65-70. They complain that US Airways' practice was to distribute the lump sum benefits within 45 days after the Actual Retirement Date without paying interest. In Count II, Plaintiffs allege that US Airways' practice of delaying the distribution of lump sum benefits violated Title I of ERISA, 29 U.S.C. §§ 1054(c)(3) and 1055, because the present value of the sums actually received was not the actuarial equivalent of the present value as of the participants' normal retirement date. *Id*. ¶¶ 72-74. Finally, Count III

alleges that PBGC violated its duties as a successor fiduciary because it knew that US Airways had breached its fiduciary duties to the Plan and did not rectify those breaches. *Id*. ¶¶ 76-79.

## II.  STATUTORY AND REGULATORY FRAMEWORK

ERISA, 29 U.S.C. § 1342(d), sets forth the powers and responsibilities of a statutory trustee of a terminated plan. In § 1342(d)(1), Congress specifically conferred power on the statutory trustee of a terminated plan "to do any act authorized by the plan or this title to be done by the plan administrator or any trustee of the plan." 29 U.S.C. § 1342(d)(1). Pursuant to this statute and implementing regulations, the statutory trustee is authorized to determine liabilities for unpaid benefit payments due before termination and to pay them from plan assets. *See* 29 CFR § 4044.3(a); 29 U.S.C. § 1344(a). As statutory trustee, PBGC is a "fiduciary within the meaning of paragraph (21) of section 1002 of [Title IV]." 29 U.S.C. § 1342(d)(3). Any participant or beneficiary who is adversely affected by an action of PBGC with respect to a plan in which the participant has an interest may bring an action against PBGC under § 1303(f). *See id*. §§ 1303(f)(1) & (f)(6). Section 1303(f) provides: "This subsection shall be the exclusive means for bringing actions against [PBGC] under this subchapter, including actions against [PBGC] in its capacity as a trustee under section 1342 or 1349 of this title." *Id*. § 1303(f)(4).

In an action brought under § 1303(f), the court may award "costs and expenses incurred in connection with such action" to the prevailing party, but § 1303(f)(3) makes no mention of attorneys' fees. *See id*. § 1303(f).

## III.  LEGAL STANDARDS

PBGC moves to dismiss three aspects of the Complaint under Federal Rule of Civil Procedure 12(b)(6). Specifically, PBGC moves to dismiss Count III, arguing that Plaintiffs have an

adequate remedy at law for their "mere denial of benefits" claim; PBGC moves to dismiss Plaintiffs' request for attorneys' fees; and PBGC seeks to limit the scope of the putative class. Each of these arguments is fiercely contested by Plaintiffs.

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A sufficient complaint "contains a short and plain statement of the claim showing that the pleader is entitled to relief" enough "to give a defendant fair notice of the claims against him." *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 8(a)). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *see also Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, No. 07-7105, 2008 U.S. App. LEXIS 9627, at *14 (D.C. Cir. Apr. 29, 2008) (under Rule 12(b)(6), "a court must construe a complaint liberally in the plaintiff's favor, accepting all of the allegations in the complaint as true, even if doubtful in fact") (citing *Twombly*, 127 S. Ct. at 1965). Even so, the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, and the court need not accept as true inferences unsupported by facts set out in the

complaint or legal conclusions cast as factual allegations. *Aktieselskabet*, 2008 U.S. App. LEXIS 9627, at *19 n.4; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "A complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet*, 2008 U.S. App. LEXIS 9627, at *19 n.4.

In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). However, the Court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

## IV. ANALYSIS

### A. Breach of Fiduciary Duty

Counts I and II of the Complaint allege that US Airways, as Plan administrator, underpaid Plaintiffs' benefits. Count III alleges that the underpayment of benefits constituted a fiduciary breach by US Airways and that PBGC breached its successor fiduciary duty by failing to remedy a known breach. Plaintiffs allege:

> Pursuant to 29 U.S.C. § 1104(a)(1)(A) and 29 U.S.C. § 1104(a)(1)(B), as a fiduciary of the Plan, U.S. Airways was required to act solely in the interests of and for the exclusive purpose of providing benefits to Plaintiffs and Class Members . . . . Instead, U.S. Airways deliberately, unnecessarily and/or unreasonably withheld lump-sum payments from Plaintiffs and Class Members . . . . PBGC had knowledge of this breach of fiduciary duty by U.S. Airways, and has not made reasonable efforts under the circumstances to remedy

the breach, in violation of 29 U.S.C. § 1105(a)(3).[6]

Compl. ¶¶ 76-78.

Because Counts I and II seek the same alleged payments as does Count III, PBGC argues that Count III is merely a dressed-up benefits claim and should be dismissed. PBGC further argues that it cannot be liable as a fiduciary under Count III because it was not a Plan fiduciary at the same time as US Airways, citing 29 U.S.C. § 1109(b), which states that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). The Court will address these arguments in reverse order.

        2.     <u>29 U.S.C. §§ 1109(b) and 1105(a)</u>

Defendants argue that 29 U.S.C. § 1109(b) bars Plaintiffs from alleging liability against PBGC for acts of prior fiduciaries. Section 1109(b) provides that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). "Because 'this title' encompasses all of Title I, including § 1105, no liability can be imposed." *See* Def.'s Mem. at 11 (citing *Beauchem v. Rockford Products Corp.*, 2004 WL 432328, at *3 (N.D. Ill. Feb. 6, 2004) ("Allowing a fiduciary to be liable for failing to correct a breach committed by prior fiduciaries would destroy the protection of section 1109(b).")).

In response, Plaintiffs argue that they "are not seeking to hold PBGC liable for US

---

[6] "[A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: . . . (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(3).

Airways' fiduciary breach; instead, Plaintiffs seek to hold PBGC liable for its own breach, which occurred when it failed to make reasonable efforts to remedy US Airways Group, Inc.'s fiduciary breach." Pls.' Opp'n at 5. Plaintiffs also insist that both §§ 1109(b) and 1105(a)(3) must be given reconciling meanings and that PBGC's statutory interpretation would make § 1105(a)(3) meaningless, at least as to PBGC.

In support of the argument that the statutes should be given reconciling meanings, Plaintiffs cite two advisory opinions issued by the Department of Labor ("DOL") over thirty years ago. *See* Pls.' Opp'n at 6-7. In 1976, DOL opined:

> Section 409(b) [29 U.S.C. § 1109(b)] provides that no fiduciary shall be liable with respect to a breach of fiduciary duty under Title I of the Act, if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary. Section 409(b) does not, however, exempt a fiduciary from carrying out his responsibilities to a plan imposed by various provisions of Part 4 of Title I of the Act. For example, although a fiduciary may not be liable under section 409 of the Act for the acts of predecessor fiduciaries, if he knows of a breach of fiduciary responsibility committed by a predecessor fiduciary, he would be obligated to take whatever action is reasonable and appropriate under the circumstances to remedy such breach. Failure to take such action would constitute a separate breach of fiduciary responsibility by the successor fiduciary.

DOL Opinion No. 76-95 (Sept. 30, 1976). DOL confirmed this interpretation in DOL Opinion No. 77-79/80A at *13 (Oct. 3, 1977). *See also Weisler v. Metal Polishers Union & Prod. & Novelty Workers Union 8A-28A*, 533 F. Supp. 209, 215-16 (S.D.N.Y. 1982) ("Furthermore, as defendants quite correctly point out, 29 U.S.C. § 1105(a)(3) requires the Trustees to examine and if necessary rescind prior actions if such violations violated provisions of ERISA.").

The Court agrees that both statutory provisions must have been intended by Congress to have real meaning but disagrees with Plaintiffs' further argument that PBGC is, therefore,

necessarily liable if it knew of, and did nothing to remedy, a prior breach by US Airways. Sections 1109(b) and 1105(c) can be reconciled if one applies the correct timing to both. Many retirement plans have multiple trustees and, therefore, multiple persons with fiduciary duties to the beneficiaries at the same time. In such an instance, if one fiduciary recognizes a breach committed by another(s), s/he has an obligation to make reasonable efforts to remedy the breach. This does not mean that a successor trustee is always liable for a breach by its predecessor: such a result would clearly be at odds with § 1109(b). On the other hand, a predecessor's breach that continues to have effect on beneficiaries during the term of a successor trustee must be remedied to the extent practicable under § 1105(a)(3).

This latter analysis does not apply to Plaintiffs' claims. The delay in disbursement of their lump sum payments, which is alleged to have violated the Plan and ERISA, was a single event as to each Plaintiff with no continuing effect to the present. Plaintiffs' argument only makes sense in the circumstance of a continuing breach, not a past but unremedied breach that is not adjudicated. Case law supports this Court's conclusion. *See Beauchem*, 2004 U.S. Dist. LEXIS 2091, at *9; *Chao v. USA Mining Inc.*, Nos. 04-1 & 04-138, 2007 U.S. Dist. LEXIS 5598, at *51 (E.D. Tenn. Jan. 24, 2007) ("The duty imposed to remedy the fiduciary breaches of others is limited by 29 U.S.C. § 1109(b)"); *Brugos v. Nannega*, No. 03-547, 2005 U.S. Dist. LEXIS 12624, at *13-14 (N.D. Ind. June 24, 2005).

    2.    <u>29 U.S.C. § 1132(a)</u>

PBGC argues that the Court should dismiss the co-fiduciary claim in Count III because it is merely a repackaged denial of benefits claim. Federal courts routinely dismiss benefit

claims masquerading as fiduciary claims under 29 U.S.C. § 1132(a).[7] *See, e.g.*, *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428 (6th Cir. 2006); *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir. 2006); *Crummett v. Metro. Life Ins. Co.*, No. 06-1450, 2007 U.S. Dist. LEXIS 50956, at *6-9 (D.D.C. July 16, 2007). These courts rely on the Supreme Court's decision in *Varity Corporation v. Howe*, 516 U.S. 489 (1996), in which the Court held that 29 U.S.C. § 1132(a)(3) authorizes "appropriate" equitable relief, including claims for breach of fiduciary duty, only in circumstances in which a plaintiff has no other adequate remedy under 29 U.S.C. § 1132. *See Crummett*, 2007 U.S. Dist. LEXIS 50956, at *9 (citing *Varity*, 516 U.S. at 513).

This case is similar to *Moore v. Lafayette Life Insurance Company*. In *Moore*, in addition to claims for payment of benefits, the plaintiff alleged fiduciary breach because "Defendants unreasonably and/or arbitrarily withheld payments [of disability benefits] in bad faith, knowing the plaintiff's claims to be valid." 458 F.3d at 428. Likewise here, Plaintiffs claim that US Airways "deliberately, unnecessarily and/or unreasonably withheld lump-sum payments from Plaintiffs and Class Members." Compl. ¶ 77. In dismissing the claim for fiduciary breach, the court in *Moore* reasoned that plaintiff's "ability to bring suit for payment of benefits under 29 U.S.C. § 1132(a)(1) precluded plaintiff's suit under the 'catch-all' remedial section for those subclaims sounding as failure to pay due benefits." 458 F.3d at 428 (citing *Varity*, 516 U.S. at 512). Because the instant claims at issue in Count III are based on the same denial of benefits claims found in Counts I and II, the Plaintiffs have no cause of action for fiduciary breach under § 1132(a)(3). *See id.*; *see also*

---

[7] "A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3).

*Crummett*, 2007 U.S. Dist. LEXIS 50956, at *9 ("In short, [plaintiff] has merely repackaged her 'denial of benefits' claim as a claim for 'breach of fiduciary duty.' In these circumstances, the court concludes with little hesitancy that [plaintiff's] remedies pursuant to [29 U.S.C. § 1132(a)(1)(B)[8]] are adequate and that her fiduciary-duty claim must be dismissed.") (internal quotation marks and alterations omitted) (citing *Varity*, 516 U.S. at 513).

Plaintiffs argue against the characterization of their fiduciary breach claim as a repackaged benefits claim and contend that dismissal of their fiduciary breach claim should not occur at the pleadings stage simply because Plaintiffs also bring benefits claims. *See* Pls.' Opp'n at 8 (citing *Goepfort v. Trustmark Ins. Co.*, No. 05-1132, 2006 WL 2597984, at *2 (E.D. Wis. Sept. 11, 2006) ("federal pleading rules allow a plaintiff to plead claims hypothetically or alternatively")). While the Court agrees that plaintiffs can generally advance alternative claims, that flexibility does not help these Plaintiffs. As described in *Crummett v. Metropolitan Life Insurance Company*:

> The court agrees that dismissal of § 502(a)(3) claims should not automatically occur simply because a complaint also brings § 502(a)(1)(B) claims . . . . The gravaman of Crummett's complaint is that she was improperly denied benefits, and the remedies she seeks are wholly directed at recovering for that denial. She alleges no other injuries and seeks no other remedies. Should she prevail, her remedies under (1)(B) [for benefits] will make her whole and equitable relief will be unnecessary; should she lose, it will be because she is not entitled (equitably or otherwise) to recover at all.

2007 U.S. Dist. LEXIS 50956, at *3. Likewise here, Plaintiffs have adequate potential remedies if in fact they were denied benefits through a delayed payment, and, accordingly, their fiduciary breach claims will be dismissed.

---

[8] "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

**B.     Attorneys' Fees**

Plaintiffs initiated this lawsuit as a class action more than seven years ago when they sued US Airways. Since then, US Airways has gone through two bankruptcies, the Plan has been terminated, and PBGC has become the statutory trustee. Now, Plaintiffs seek an award of attorneys' fees against PBGC. *See* Compl., Request for Relief ¶ iii; *see also* Compl. ¶ 4 ("Plaintiffs and all others similarly situated also seek the recovery of all reasonable costs of the litigation and attorneys' fees pursuant to 29 U.S.C. § 1132(g)[9] and 29 U.S.C. § 1303(f)(3)."[10]). PBGC contends that Plaintiffs' claims against it can arise solely under § 1303(f) and that the law does not allow payment of attorneys' fees by the corporation. Defendants move for dismissal of this claim as a matter of law. The Court will grant the motion.

ERISA clearly provides for discretionary awards of attorneys' fees in civil actions by plan participants against defendants other than PBGC. *See* 29 U.S.C. §§ 1370(a) & (e)(1) (single employer plans) and 29 U.S.C. §§ 1451(a) & (e) (multi-employer plans). Section 1370(a) authorizes participants who are "adversely affected by an act or practice of any party (*other than the corporation*)" to sue and, under § 1370(e)(1), they may be awarded, if prevailing, "costs and expenses incurred in connection with such action, including reasonable attorney's fees." *Id*. §§

---

[9] Section 1132(g) ("Civil enforcement") provides: "In an action under this title [Title I] . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g).

[10] Section 1303(f) provides: "In an action brought under this subsection, the court may award all or a portion of the costs and expenses incurred in connection with such action to any party who prevails or substantially prevails in such action." 29 U.S.C. § 1303(f)(3). Section 1303(f) further provides: "This subsection shall be the exclusive means for bringing actions against the corporation under this title, including actions against the corporation in its capacity as a trustee under section 4042 [29 U.S.C. § 1342]." 29 U.S.C. § 1303(f)(4).

1370(a) & (e)(1) (emphasis added).  Similarly, § 1451(a) authorizes participants in multi-employer plans to sue "any party" except the "Secretary of the Treasury, the Secretary of Labor, *or the Corporation*," and, pursuant to § 1451(e), the prevailing party may receive an award of "costs and expenses incurred in connection with such action, including reasonable attorney's fees."  *Id*. §§ 1451(a) & (e) (emphasis added).

Title IV of ERISA provides that any participant who "is adversely affected by any action of [PBGC] with respect to a plan in which such person has an interest . . . may bring an action against the corporation for appropriate equitable relief in the appropriate court."  *Id*. § 1303(f)(1).  Further, ERISA specifies that "[t]his subsection shall be the *exclusive means* for bringing actions against the corporation, . . . including actions against the corporation in its capacity as a trustee under section 1342 or 1349 of this title."  *Id*. § 1303(f)(4) (emphasis added); *see also Garland v. US Airways, Inc.*, No. 05-140, 2006 U.S. Dist. LEXIS 92803, at *16 (W.D. Pa. Dec. 21, 2006).  A prevailing party in a suit against PBGC may receive a discretionary award of the "costs and expenses incurred in connection with such action."  29 U.S.C. § 1303(f)(3).  Without doubt, Plaintiffs sued PBGC in its capacity as trustee of the terminated Plan.  *See* Compl. ¶¶ 1 & 4.  Plaintiffs are suing PBGC as trustee of the Plan and they ultimately seek payment of benefits from Plan assets.  PBGC's authority to make any payment out of Plan assets arises solely from its role as statutory trustee of a terminated plan.[11]  This suit, therefore, must be brought pursuant to 29 U.S.C. § 1303(f).  There is no mention of an award of attorneys' fees in § 1303(f) and PBGC contends that fees cannot be

---

[11] 29 U.S.C. § 1342(d)(1)(B)(I) gives the trustee the power to pay benefits in accordance with the requirements of Title IV.  29 U.S.C. §§ 1342(d)(1)(A)(I) and (B) grant the statutory trustee authority to do any act that the Plan administrator is authorized to do by the Plan or by Title IV.  US Airways, as Plan administrator, was authorized by the Plan to pay benefits under the Plan.

assessed against it. *See* Def.'s Mem. at 12 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (holding that party litigants are required to pay their own attorneys' fees except where fee shifting is specifically authorized by statute)). *See also Thomas v. Marshall*, 482 F. Supp. 160, 169 n.33 (S.D. Ala. 1979) ("Nowhere in Title IV is there any provision for attorney fees to a prevailing party under [29 U.S.C. § 1330(f)].").

Not surprisingly, Plaintiffs disagree. First, they assert that while § 1303(f) grants subject matter jurisdiction in this case, it does not exclusively govern the remedies available to them. *See* Pls.' Opp'n at 9. "[O]ne can make a distinction between claims made by Plaintiffs against PBGC as a successor-in-interest/substitute trustee of the Plan (Counts I and II) and claims made against PBGC in its own right (Count III). As to Counts I and II, at least, Plaintiffs are entitled to reasonable attorneys' fees under 29 U.S.C. § 1132(g)." *Id*. Second, Plaintiffs rely on 28 U.S.C. § 2412(b), which allows a court to award reasonable fees and expenses of attorneys, in addition to costs, to the prevailing party in a civil action brought against the United States "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." *See id*. at 10 (citing 28 U.S.C. § 2412(b) (the Equal Access to Justice Act)). Finally, they argue that the lack of an express attorneys' fee provision in § 1303(f) "is not equivalent to an express prohibition by statute" and, therefore, the Court could award attorneys' fees to Plaintiffs if the circumstances warrant an award. *See* Pls.' Opp'n at 10.

An award of attorney's fees is not available to Plaintiffs in this suit against PBGC. The presence of a provision for attorneys' fees against plan administrators and others involved in such plans and the absence of a similar provision in claims against PBGC after it has taken over a

bankrupt plan cannot be deemed an accident.[12]  Because Plaintiffs can sue only under § 1303(f), and § 1303(f) does not provide for attorneys' fees, Plaintiffs have not stated a claim for such fees.  The general language of the Equal Access to Justice Act, 28 U.S.C. § 2412, cannot accomplish what the specifics of ERISA do not.[13]  Defendant's motion to dismiss Plaintiffs' request for attorneys' fees as a matter of law will be granted.

### C. Scope of the Putative Class

Plaintiffs seek to certify this case as a class action.  *See* Compl. ¶¶ 12-19.  The putative class is defined as:

> All participants and/or beneficiaries of the Retirement Income Plan for Pilots of U.S. Air Inc., who, *from January 1, 1990 to December 31, 2003*, elected to receive a lump-sum payment as a full or partial distribution of their retirement benefits, but who did not receive their lump-sum payment on the first day of the month coinciding with or following their Normal Retirement Date (or alternatively, for early retirees, the date on which they elected to begin receiving their retirement income).

---

[12] *See Rusello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) ("[W]here Congress includes particular language in one section of a statute but omits in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).  Moreover, "[s]overeign immunity bars awards of attorneys' fees and costs against the government, except insofar as that immunity has been waived." *Alexander v. FBI*, Nos. 96-2123 & 97-1288, 2008 U.S. Dist. LEXIS 27153, at *80-81 (D.D.C. Apr. 3, 2008) (citing cases); *see also In re Turner*, 14 F.3d 637, 640 (D.C. Cir. 1994) ("even where a fee award is otherwise authorized, the Government is shielded by sovereign immunity from attorney's fee liability except to the extent it has [explicitly] waived its immunity") (internal quotation and citation omitted).  There is no such explicit waiver here.

[13] The Equal Access to Justice Act ("EAJA") "applies only to claims for attorneys' fees when no other specific statute deals with an award of attorneys' fees against the government." *See EEOC v. Kimbrough Inv. Co.*, 703 F.2d 98, 103 (5th Cir. 1983) (denying attorneys' fees request under EAJA because Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, has an explicit attorneys' fees provision at 42 U.S.C. § 2000e-5(k)).  ERISA specifies when attorneys' fees may be awarded under Title IV, *see supra*; accordingly, EAJA does not apply here.

Compl. ¶ 12 (emphasis added).

29 U.S.C. § 1303(f)(5) provides that an action under § 1303(f) may not be brought after the later of: (1) six years after the date on which the cause of action arose; or (2) three years after the earliest date on which the plaintiff acquired or should have acquired knowledge of the existence of the cause of action. *See* 29 U.S.C. § 1303(f)(5). PBGC argues that, because Plaintiffs filed their original complaint on January 18, 2000, all putative class members who received their benefits prior to January 19, 1994 are time-barred. Plaintiffs' position is that the "appropriate vehicle for asserting a limitations defense is a motion for summary judgment," or, in this case, an opposition to Plaintiffs' eventual motion for class certification. *See* Pls.' Opp'n at 11 (citing *McQueen v. Woodstream Corp.*, No. 05-2068, 2007 WL 2284747, at *4 (D.D.C. Aug. 10, 2007) ("Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.")).

A Plan participant must exhaust administrative remedies prior to bringing suit in federal court. *Boivin v. US Airways, Inc.*, 446 F.3d 148, 153-54 (D.C. Cir. 2006). According to Plaintiffs, despite his retirement as of December 1, 1996, J.C. Stephens did not receive his lump-sum distribution until January 14, 1997. Mr. Stephens inquired about the delay and, soon thereafter, "commenced his pursuit of administrative remedies." Pls.' Opp'n at 11. "This included a demand for payment of the actuarial equivalent of the delayed lump sum distribution, a request for relief to the Plan Administrator, and an appeal to the Pilots Retirement Board." *See* Compl. ¶¶ 33-37. The Pilots Retirement Board denied J.C. Stephens' claim on September 21, 1998. *See id.* ¶ 37. Plaintiffs argue that "[w]ith this decision, J.C. Stephens' and the other [putative] class members'

administrative remedies were exhausted." Pls.' Opp'n at 12.  They allege that the Pilot Retirement Board's decision did not turn on facts or circumstances unique to J.C. Stephens; rather, the rationale of the Board's decision applied to "all similarly situated pilots of US Airways.  Therefore, J.C. Stephens exhausted available administrative remedies for himself as well as the Class."  *Id*.  This would, according to Plaintiffs, permit the Plaintiffs to define the class as including at least *some* of the pre-1994 class members.  While this argument appears quite shaky, the Court concludes that it needs more facts to decide the issue.  *See McQueen*, 2007 WL 2284747, at *4.  PBGC's motion to dismiss, as it relates to the pre-1994 putative class members, will be denied without prejudice.

## V.  CONCLUSION

Defendant's motion to dismiss Count III of the Complaint and the request for attorneys' fees will be granted.  Defendant's motion to dismiss the claims of any putative class members who received a lump-sum distribution prior to 1994 will be denied without prejudice.  A memorializing order will be issued with this Memorandum Opinion.

/s/
ROSEMARY M. COLLYER
United States District Judge

Date: May 20, 2008