UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES C. STEPHENS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-1264 (RMC) |
| US AIRWAYS GROUP, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

Plaintiffs James C. Stephens and Richard Mahoney,[1] retired pilots for US Airways, sue the Pension Benefit Guaranty Corporation ("PBGC")[2] as successor-in-interest to the Retirement Income Plan for Pilots of U.S. Air, Inc. ("Plan"). They allege that US Airways violated the Plan by not paying lump sum benefits on their benefit commencement dates and that US Airways violated the "actuarial equivalent" provision of the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1054(c)(3), by not paying interest for the period between their benefit commencement dates and the dates the lump sum benefits were actually paid.[3] Pending before the Court are PBGC's motion for summary judgment and Plaintiffs' motion for partial summary judgment. *See* Dkt. ## 23 & 24. For the reasons explained herein, the Court will grant PBGC's motion and deny Plaintiffs' motion.

---

[1] The claims of Plaintiffs Floyd G. Stephens and Donald V. Nippert were dismissed without prejudice. *See* Minute Orders dated September 8, 2009 and November 2, 2009.

[2] The caption of the Third Amended Complaint names US Airways Group, Inc., as the lead Defendant but this lawsuit is only against PBGC.

[3] The Court dismissed Plaintiffs' breach of fiduciary duty claim. *See* May 20, 2008 Order [Dkt. # 9].

# I. FACTS

US Airways was the contributing sponsor and plan administrator of the Plan until March 31, 2003, when, pursuant to Title IV of ERISA[4] and an agreement between US Airways and PBCG, the Plan was terminated because its assets were inadequate to pay its liabilities. On that same date, PBGC became the statutory trustee of the Plan and is now paying its benefits, within the limits of Title IV. PBGC is also acting as the guarantor of Title IV benefits that the terminated Plan owes and will owe to Plan beneficiaries.

Two such participants are Plaintiffs James C. Stephens and Richard Mahoney. On their sixtieth birthdays, Messrs. Stephens and Mahoney retired as pilots for US Airways.[5] Mr. Stephens retired on November 25, 1996. Mr. Mahoney did so on March 2, 1999. Upon retirement, both elected to receive their accrued retired benefits under the Plan as a single lump sum payment, rather than as an annuity paid monthly. Mr. Stephens received a lump sum payment in the amount of $488,477.22 on January 14, 1997, 45 days after his December 1, 2006 benefit commencement date. Mr. Mahoney received a lump sum payment in the amount of $672,162.79 on May 14, 1999, 45 days after his April 1, 1999 benefit commencement date.

After learning that this 45-day delay was being applied to all lump sum payments under the Plan, Mr. Stephens initiated administrative proceedings to challenge the actions of US Airways and the Plan. These administrative proceedings continued for approximately two years,

---

[4] *See* ERISA § 4002, codified at 29 U.S.C. § 1302. Title IV of ERISA, 29 U.S.C. §§ 1301-1461, governs the federal pension insurance program administered by PBGC. When a plan terminates without sufficient assets to pay its liabilities to Plan beneficiaries, PBGC typically becomes statutory trustee of the terminated plan. Title I of ERISA, 29 U.S.C. §§ 1001-1191c, covers employee benefit rights and the administration of ongoing pension plans.

[5] Federal law required pilots to retire on their sixtieth birthday.

culminating in a decision by the US Airways Retirement Board[6] denying Mr. Stephens' administrative challenge.

Plaintiffs allege that US Airways violated the Plan by not paying lump sum benefits on their benefit commencement dates and that US Airways violated ERISA's "actuarial equivalent" rule, 29 U.S.C. § 1054(c)(3), by not paying interest for the 45-day period between their benefit commencement dates and the dates the lump sum benefits were paid.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

---

[6] The Retirement Board was created by US Airways and the Pilots Association pursuant to 45 U.S.C. § 184 of the Railway Labor Act, 45 U.S.C. § 151, *et seq.*

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### A. Failure to Pay Lump Sum Benefits on Benefit Commencement Dates

Count I of the Third Amended Complaint alleges that the Plan required US Airways to pay lump sum benefits to Plaintiffs on their benefit commencement dates and that US Airways breached that requirement by paying Plaintiffs their lump sum benefits 45 days after their benefit commencement dates. 3d Am. Compl. ¶¶ 65-70. The Plan defines "Benefit Commencement Date" as "the date as of which payment of a Participant's retirement income is to commence, as determined in accordance with the further terms of the Plan." Pls.' Mot. for Partial Summ. J. [Dkt. # 24], Ex. A ("Plan Document") § 2.1(G). The "further terms of the Plan" provide that "[e]ach Participant who

retires from the employ of the Employer on his Normal Retirement Date . . . will receive a *normal retirement income* commencing on the first day of the month coinciding with or next following his Normal Retirement Date." *Id.* § 4.3 (emphasis added). "Normal Retirement Date" is defined as "the date on which the Participant attains his 60th birthday." *Id.* § 2.1(V). The Plan provides that "[a] Participant's retirement income will be payable monthly, with each payment equal to 1/12th of the yearly amount" and that "[t]he first of such monthly payments will be made at the Participant's Benefit Commencement Date, with subsequent monthly payments being made at the first of each month thereafter until the Participant's death." *Id.* § 9.5. The Plan also provides for "optional forms of payment," including a "lump sum option." *See id.* §§ 10 & 10.4. However, the Plan is silent as to when lump sums must be paid.

Plaintiffs argue that the Plan required US Airways to pay their lump sums on their Benefit Commencement Dates. They construe "the date as of which payment of a Participant's retirement income is to commence" as the date on which lump sum payments must be made. Plaintiffs conflate the date benefits commence with the date payments must be made. The Internal Revenue Service distinguishes between the commencement or starting date of an annuity and the date on which benefits actually are paid:

> The annuity starting date is the first date of the first period for which an amount is paid, not the actual date of payment. Thus, if participant A is to receive annuity *payments as of* the first day of the first month after retirement but does not receive any payments until three months later, the annuity starting date is the first day of the first month. For example, if an annuity is to *commence* on January 1, January 1 is the annuity starting date *even though the payment for January is not actually made until a later date*.

26 C.F.R. § 1.401(a)-20, Q&A-10(b)(2) (emphasis added). The regulation's discussion of "annuity

starting date"—"participant A is to receive annuity payments as of the first day of the first month after retirement," *id.*, is analogous to the definition of "Benefit Commencement Date"—"the date as of which payment of a Participant's retirement income is to commence." Plan Document § 2.1(G). As the regulation makes clear, the annuity starting date, that is, the Benefits Commencement Date, is "not the actual date of payment." 26 C.F.R. § 1.401(a)-20, Q&A-10(b)(2). Plaintiffs err in construing payment "as of" a date to mean payment "on" that date.

Plaintiffs argue that the regulation is inapposite because "it deals not with delayed payments or actuarial equivalence, but with 'notification related to the joint and survivor annuity.'" Pls.' Opp'n [Dkt. # 29] at 9 (quoting deposition testimony of Colin England). Plaintiffs misunderstand the import of the regulation. The regulation is part of the Internal Revenue Service's guidance of over thirty questions and answers on benefit distributions from qualified plans, and it addresses more than just "notification" issues. Indeed, the regulation also provides that "[a] payment shall not be considered to occur after the annuity starting date merely because actual payment is reasonably delayed for calculation of the benefits amount if all payments are actually made." 26 C.F.R. § 1.401(a)-20, Q&A-10(b)(3). The significance of the regulation is that it informs the meaning of the term "Benefit Commencement Date" as used in the Plan and clarifies that the term means "annuity starting date," which is not necessarily the date on which benefits are payable.

Lest there be any doubt, Section 9.5 of the Plan provides that "[a] Participant's retirement income will be payable monthly, with each payment equal to 1/12th of the yearly amount" and that "[t]he first of such monthly payments will be made at the Participant's Benefit Commencement Date, with subsequent monthly payments being made at the first of each month thereafter until the Participant's death." Plan Document § 9.5. Tellingly, there is no similar

provision in Section 10 of the Plan, which governs optional forms of payment, including lump sums. *See id.* § 10. If "Benefit Commencement Date" were synonymous with date of payment, as Plaintiffs assert, there would be no reason for Section 9.5 to specify when the first payment of the annuity must be paid. Plaintiffs' construction would render Section 9.5 superfluous.

Plaintiffs also argue that the Summary Plan Description "reiterates that payment of retirement benefits will begin on the Benefit Commencement Date, regardless of the form." Pls.' Opp'n at 7. Plaintiffs mistakenly rely on the 1987 Summary Plan Description, which provided that "[y]our payments will begin on the first of the month that falls on or follows your 60th birthday." Pls.' Mot., Ex. G at 6. However, there was no lump sum option for pilots until May 1, 1990. The relevant Summary Plan Description amended the prior language to read "[y]our *Plan benefit* will begin on the first of the month that falls on or follows your retirement date." Def.'s Opp'n [Dkt. # 27], Ex. 1 (1991 Summary Plan Description) at 13 (emphasis added). As already discussed, the date Plan benefits begin does not mean the date Plan benefits are paid.

Having failed to show that the Plan or the relevant Summary Plan Description required US Airways to pay lump sum benefits to Plaintiffs on their Benefit Commencement Dates, Plaintiffs' claim is reduced to a challenge to the reasonableness of the carrier's policy to pay lump sum benefits 45 days after the Benefit Commencement Date. As Plan administrator until 2003, US Airways had broad discretion to interpret and construe the Plan. Section 14.1 of the Plan provides that, as Plan administrator, US Airways "shall have all such powers and authorities as may be necessary to carry out the provisions of the Plan, including the sole right to interpret and construe the Plan, to make benefit determinations and to resolve any disputes arising thereunder, subject to the provisions of Section 14.3." Plan Document § 14.1. Section 14.3 provides that "[a] Retirement

Board shall be established as provided in the Agreement, and shall have all of the powers, rights, duties, and liabilities with respect to the Plan set forth in the Agreement." *Id.* § 14.3. Given that the Plan gave US Airways discretionary authority to construe the terms of the Plan, the standard of review of its construction of those terms "is plainly deferential." *Wagener v. SBC Pension Benefit Plan--Non Bargained Program*, 407 F.3d 395, 402 (D.C. Cir. 2005).

In 1997, Mr. Stephens challenged US Airways' policy of not paying interest on lump sum benefits paid within 45 days after a participant's Benefit Commencement Date. US Airways explained "[b]ecause of the definition of 'Final Average Earnings' in the Plan which is required to determine the final benefit, coupled with pay periods specified in the collective bargaining agreement and the multiple calculations required under the terms of the Plan, it is administratively impossible to make a [lump sum] payment on a pilot's actual Benefit Commencement Date." Def.'s Mem. in Supp. of Mot. for Summ. J. [Dkt. # 23], Ex. 6 (October 9, 1997 letter from Jennifer C. McGarey, Senior Counsel) at 1-2. US Airways explained that "[i]n total, the process takes 40 business days to complete" and that "US Airways has adopted an administrative guideline of 45 days to allow for any problems which may occur." *Id.* at 2. Mr. Stephens appealed to the Retirement Board, which ruled in favor of US Airways after an evidentiary hearing.

Plaintiffs have not shown US Airways' 45-day lump sum payment policy was unreasonable under the circumstances. *See* 26 C.F.R. § 1.401(a)-20, Q&A-10(b)(3) ("[a] payment shall not be considered to occur after the annuity starting date merely because actual payment is reasonably delayed for calculation of the benefits amount if all payments are actually made"). The Court will grant PBGC summary judgment on Count I.

### B. Failure to Pay Interest Between Benefit Commencement Dates and Payment Dates

Count II of the Third Amended Complaint alleges that US Airways "had a duty to ensure that the defined benefit, when distributed as a lump-sum, was the actuarial equivalent of the annual benefit under the Plan commencing at normal retirement age" and that US Airways "breached this duty by failing to distribute the lump-sum payments for up to 45 days past the Actual Retirement Date." 3d Am. Compl. ¶¶ 72 & 73. Plaintiffs assert that "[t]he lump-sum payments are calculated as the present value of the annuity as of the Actual Retirement Date" but "the lump-sum benefits were not distributed on the Actual Retirement Date." *Id.* ¶ 73. "Rather, the lump-sum benefits were distributed 45 days later and thus, as distributed, the actual lump-sum payment was not the true present value of the annuity. As such, the lump-sum payment, as distributed, was not the actuarial equivalent to the annuity." *Id.*

ERISA provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit or amount . . . ." 29 U.S.C. § 1054(c)(3). The term "accrued benefit" is defined as "the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age." *Id.* § 1002(23). Accordingly, "ERISA requires that any lump-sum substitute for an accrued pension benefit be the actuarial equivalent of that benefit." *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 759 (7th Cir. 2003). In other words, optional forms of benefits, such as lump sums, must be the actuarial equivalent of the accrued benefit expressed as an annual annuity. *See Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d

Cir. 2000) ("The rule that regardless of any option as to timing or form of distribution, a vested participant in a defined benefit plan must receive a benefit that is the actuarial equivalent of her normal retirement benefit (that is, the accrued benefit expressed as an annuity beginning at normal retirement age) has been repeated and recognized by courts.").

Plaintiffs' expert witness agrees that "the annuity payments and the lump sum payment on Benefit Commencement Date were actuarially equivalent," but opines that "a lump sum payment made on any later date is less than the actuarial equivalent of the accrued benefit payable under the Plan . . . because it does not account for the time value of money between Benefit Commencement Date and the date the payment is actually made." Def.'s Mot., Ex. 7 (Decl. of Claude Poulin) at ¶ 8. According to Plaintiffs' expert witness, "[i]n order for the later payment to be the actuarially equivalent to the lump sum on Benefit Commencement Date and the annuity option, interest should be added to the lump sum for the period between Benefit Commencement Date and the date the lump sum was actually paid." *Id*.

ERISA's actuarial equivalence rule requires only that the value of the lump sum benefit be the actuarial equivalent of the individual's accrued benefit. *See* 29 U.S.C. § 1054(c)(3). Plaintiffs' own expert witness testified that "actuarial equivalence" means "the same value, the same actuarial present value or lump sum value *as the annuity payable at — as an accrued benefit payable as an annuity at normal retirement age*." Pls.' Mot., Ex. E (Dep. of Claude Poulin) at 56 (emphasis added). Mr. Poulin also admitted that there is a difference between owing interest on a delayed benefit payment and a failure to satisfy ERISA's actuarial equivalence rule. *See id.* at 71. Plaintiffs cite no legal authority supporting their argument that ERISA's actuarial equivalence rule requires the payment of interest to account for the time value of money resulting from reasonable delay to

allow for payment calculation. The argument is contrary to the Internal Revenue Service regulations, which provide that "[a] payment shall not be considered to occur after the annuity starting date merely because actual payment is reasonably delayed for calculation of the benefits amount if all payments are actually made." 26 C.F.R. § 1.401(a)-20, Q&A-10(b)(3). Plaintiffs' own expert witness testified that there would be no violation of ERISA's actuarial equivalence rule if the delay in payment were not more than 30 days after the Benefit Commencement Date. *See* Poulin Dep. at 79. Given that the total lump sum calculation process took US Airways about 40 business days to complete, the 45-day delay in paying Plaintiffs' lump sum benefits was not unreasonable, and Plaintiffs are not entitled to interest.

Plaintiffs rely on *Contilli v. Local 705 International Brotherhood of Teamsters Pension Fund*, 559 F.3d 720 (7th Cir. 2009), but that case is distinguishable. There, the plaintiff retired in October 1997, applied for retirement benefits in January 1998, and started receiving a monthly pension in February 1998. However, the pension fund did not pay plaintiff "anything for the post-retirement months of November and December 1997 and January 1998, nor did it increase his monthly benefit so that the actuarial value of the pension starting in February 1998 was equivalent to that of a pension starting in November 1997." *Id.* at 722. Unlike the plaintiff in *Contilli*, Plaintiffs here received the full amount of their accrued benefits as of their Benefit Commencement Dates. Plaintiffs concede as much. *See* Pls.' Statement of Facts ¶ 4 ("U.S. [A]irways calculated the Plaintiffs' lump sum benefits to be actuarially equivalent annuities using the defined Benefit Commencement Date for both."). Therefore, *Contilli* is inapposite.

Plaintiffs have not shown that US Airways' 45-day lump sum payment policy violated ERISA's actuarial equivalence rule. The 45-day delay was reasonably necessary to allow US

Airways to calculate the correct lump sum amounts. The Court will grant PBGC summary judgment on Count II.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant PBGC's motion for summary judgment [Dkt. # 23], and will deny Plaintiffs' motion for partial summary judgment [Dkt. # 24]. Plaintiffs' request for oral hearing on their motion for partial summary judgment [Dkt. # 32] will be denied as moot. A memorializing Order accompanies this Memorandum Opinion.

Date: March 17, 2010                              /s/
                                       ROSEMARY M. COLLYER
                                       United States District Judge