UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES C. STEPHENS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-1264 (RMC) |
| US AIRWAYS GROUP, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**OPINION ON CLASS CERTIFICATION**

        Plaintiffs James C. Stephens and Richard Mahoney, former pilots for US Airways, ask the Court to certify a class of former pilots who received delayed distributions of their lump-sum retirement benefits. As part of a bankruptcy proceeding, US Airways terminated the pension plan in 2003, and it was assumed by the Pension Benefit Guaranty Corporation under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. The PBGC contends that no pilot can claim a payment for interest on a delayed distribution unless he or she first exhausted administrative remedies. Concededly, only Mr. Stephens did so. This Court agrees and will deny class certification.

**I. FACTS**

        This case came to this Court by way of the District Court for the Northern District of Ohio and the Sixth Circuit. This Court dismissed the pilots' claims in part, 555 F. Supp. 2d 112 (D.D.C. 2008), then granted summary judgment to the PBGC on the remaining claims, 696 F. Supp. 2d 84 (D.D.C. 2010). The case also has been to the D.C. Circuit and back. *Stephens v. US Airways Group, Inc.*, 644 F.3d 437 (D.C. Cir. 2011). Before the D.C. Circuit, the question was the propriety of US Airways's practice of taking forty-five days to calculate and issue the

1

lump-sum retirement payments due to pilots under their Retirement Plan. *See Stephens*, 644 F.3d at 439–40.  The controlling opinion of the D.C. Circuit rejected the pilots' argument that the forty-five day delay violated the ERISA requirement that lump-sum payments be the "actuarial equivalent" of an annuity payment, as set forth in 29 U.S.C. § 1054(c)(3).[1]  *Stephens*, 644 F.3d at 440.

Notwithstanding the absence of an ERISA violation, the D.C. Circuit held that the necessary inquiry is whether Plaintiffs are entitled to interest from the delay, which is determined by "whether [US Airways's] 45-day delay was reasonable." *Id.*  To resolve that question, the controlling opinion relied on an Internal Revenue Service regulation, 26 C.F.R. § 1.401(a)–20 (Question & Answer 10(b)(3)).  *Id.*  That provision clarifies the term "annuity starting date" as used in 26 U.S.C. § 401(a)(11)(A) and provides that "[an annuity] payment shall not be considered to occur after the annuity starting date merely because actual payment is reasonably delayed for calculation of the benefit amount if all payments are actually made." 26 C.F.R. § 1.401(a)–20 (Question & Answer 10(b)(3)).  Applying the IRS regulation, the D.C. Circuit held that US Airways's forty-five day delay was "not 'reasonable'" because it was "unrelated to the administrative calculation of Plaintiffs' lump sum benefits" and did not "correspond to administrative necessity." *Id.* at 441.  Because the payment was unreasonably delayed, Mr. Stephens and Mr. Mahoney are entitled to interest, and the D.C. Circuit remanded the case to this

---

[1] The opinion of Judge Brown for the Court, *Stephens*, 644 F.3d at 438–42, is controlling.  *See id.* at 442 n.1 (Kavanaugh, J., concurring) ("Judge Brown's opinion is the controlling opinion in this case because it presents the narrowest grounds of the opinions forming a majority." (citing *Marks v. United States*, 430 U.S. 188, 193 (1977))).  Judge Kavanaugh wrote an opinion concurring in the judgment, *id.* at 442–44, and Judge Henderson wrote an opinion dissenting in part, *id.* at 444–46.  According to Judge Kavanaugh, the pilots "should receive interest for the full 45 days that [US Airways] delayed payment of their lump sum pensions." *Id.* at 442.  Judge Henderson, however, had "no doubt that payment was 'reasonably' delayed'" and thus no interest is due.  *Id.* at 444.

Court "to calculate the appropriate amounts." *Id.* at 441–42.  The circuit court did not expressly state how much of US Airways's delay should be considered reasonable on remand.  Judge Brown observed, however, that "calculation of a lump sum payment took at most 21 business days" or "approximately one calendar month," which supports the conclusion that such delay would "correspond to administrative necessity" and be reasonable, even if the extra fifteen or so days would not be.  *Id.* at 440–41.

On remand, Mr. Stephens and Mr. Mahoney press their rights to a plaintiff class pursuant to Federal Rule of Civil Procedure 23(b)(3).  Plaintiffs' first motion for class certification, which derived from the Third Amended Complaint, was denied without prejudice on July 18, 2012.  *See* Order [Dkt. 54].  The Court made three conclusions of law in denying the first class certification motion.  First, because Plaintiffs conceded that Mr. Stephens was the only member of the putative class who exhausted administrative remedies, the Court held that "exhaustion of [Mr. Stephen's] administrative remedies [as a named plaintiff] does not, as a matter of law, excuse the entire putative class from exhausting their administrative remedies." *Id.* at 3–6.  Second, even assuming *arguendo* that exhaustion would be excused where the putative class's allegations were based on statutory violations as opposed to the Plan's administration, exhaustion would not be excused because the Plaintiffs challenged "the administration of the [US Airways Retirement] Plan and not just the legality of the Plan" in the Third Amended Complaint.  *Id.* at 6–7 (citing *Kifafi v. Hilton Hotel Ret. Plan*, Civ. No. 98-1517, 2004 WL 3619156, at *5 (D.D.C. Sept. 27, 2004)).  Finally, as to Plaintiffs' argument that exhaustion of administrative remedies should be excused because it would have been futile, the Court held that "[a]t most, Plaintiffs' claim of futility would apply only to those pilots who failed

3

to pursue administrative remedies *after* Mr. Stephens' administrative denial on March 8, 1999."
*Id.* at 7–8.

Plaintiffs filed their Fourth Amended Class Action Complaint on August 30, 2012.  *See* [Dkt. 60].  The class they seek to certify is defined as:

> All participants and/or beneficiaries of the Retirement Income Plan for Pilots of U.S. Air Inc., who, from February 28, 1997, to March 31, 2003, elected to receive a lump-sum payment as a full or partial distribution of their retirement benefits, but who did not receive their lump-sum payment on the first day of the month coinciding with or following their Normal Retirement Date (or alternatively, for early retirees, the date on which they elected to begin receiving their retirement income).

*Id.* ¶ 10.  On October 2, 2012, Plaintiffs filed their Second Motion for Class Certification, Dkt. 61, which PBGC opposes, Dkt. 64 ("Def. Opp.").

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) requires a class to satisfy four criteria before certification: 1) numerosity, so that joinder of all persons would be impractical; 2) commonality of questions of law and fact; 3) typicality of named parties' claims and defenses to the members of the class; and 4) adequacy of representation of the class by the named parties and counsel.  Fed. R. Civ. P. 23(a); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Additionally, plaintiffs must demonstrate that a class is maintainable under Rule 23(b)(1), (2), or (3).  *Amchem Prod.*, 521 U.S. at 614.  Plaintiffs rely on Rule 23(b)(3), *see* Second Motion for Class Certification at 1, which provides for class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### III.  DISCUSSION

As described, the class would encompass at least 650 former US Airways pilots and would satisfy the numerosity requirement.  *See Lindsay v. Gov't Emps. Ins. Co.*, 251 F.R.D. 51, 55 (D.D.C. 2008) ("Typically, a class in excess of 40 members is sufficiently numerous to satisfy [the numerosity] requirement.").  Without discovery or a trial, the Court credits the factual allegations in the Amended Complaint and would find sufficient commonality because US Airways had a regular practice of paying lump sum distributions on the forty-fifth day after the benefit commencement date.  *See Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." (quoting *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 198 (D.D.C. 2000) (internal quotation marks omitted))).  Further, there is no argument that Messrs. Stephens and Mahoney, via counsel, could fairly and adequately represent the class.  *See Lindsay*, 251 F.R.D. at 55 ("A proposed representative is 'adequate' if (1) his interests do not conflict with those of other class members, and (2) he will vigorously prosecute the interests of the class through qualified counsel." (citation omitted)).

The issue in this case is the third class action requirement, typicality.  *See* Def. Opp. at 4 ("Plaintiffs forthrightly concede that Mr. Stephens is the *only* individual who exhausted his administrative remedies under the Plan, and that no other pilot who received a lump sum before or after did so.  For this reason, all other putative class members are precluded from bringing suit . . . .").  As to the question of what would have been a "reasonable" period of time to calculate and distribute lump sum benefits, Mr. Stephens presents a typical claim.  The trouble is that Mr. Stephens is the only member of the putative class who exhausted his administrative

remedies, as Plaintiffs concede.[2]  *See* Pl. Mem. Supp. Second Mot. Class Cert. [Dkt. 62] ("Pl. Mem.") at 6–7.  Thus, Mr. Stephens's case is in a drastically different posture from the cases of other putative plaintiffs as to a potentially dispositive affirmative defense asserted by the PBGC.  *See* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1006 (3d ed.) (noting that the typicality requirement may not be met when "the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present").

Plaintiffs assert that this difference is not legally significant for two reasons.[3]  First, according to Plaintiffs, this case involves allegations of "violations of the statutory provisions of ERISA" as opposed to "claims deriving from the Plan," and "at least four district courts" in this District have held that exhaustion is not required in such a case.  Pl. Mem. at 6–9 (citing, *inter alia*, *Coleman*, 94 F. Supp. 2d at 18).  Second, even if exhaustion is required, Plaintiffs argue, exhaustion should be excused because it would have been futile: because US Airways "treated similar claims consistently with one another," pilots who filed subsequent to Mr. Stephens would also have been unsuccessful with the Retirement Board.  *Id.* at 9–11.

While Plaintiffs satisfy most of the criteria of a class action, most is not all.  As discussed below, of the putative class, only Mr. Stephens exhausted administrative remedies, and

---

[2] Although Mr. Stephens was repeatedly warned that he needed to appear before the contractual Retirement Board, he failed to present himself or any representative.  *See* Def. Opp. First Class Cert. Mot., Ex. 1 [Dkt. 51-1] (March 8, 1999, Arbitration Award) at 2–3.  Thus, the company's arguments went unanswered, and the Retirement Board denied his appeal.  *Id.* at 7.  Plaintiffs do not argue that Mr. Stephens's failure to appear is legally significant in this case; in fact, Plaintiffs' argument relies on the position that the Retirement Board's denial of Mr. Stephens's appeal was "final" and was precedent for subsequent appeals.  *E.g.*, Pl. Mem. at 10.

[3] In its denial of the first class certification motion, the Court rejected the argument that only a named class member must exhaust administrative remedies.  *See* July 18, 2012, Order at 4–6.  Plaintiffs do not argue that theory to support their Second Motion for Class Certification.

only he can present a claim in federal court. Mr. Stephens therefore is not "typical" of the class and constitutes a class of one. *See* Fed. R. Civ. P. 23(a)(3). The caselaw is clear that "barring exceptional circumstances, parties aggrieved by decisions of pension plan administrators must exhaust the administrative remedies available to them under their pension plans before challenging those decisions in court." *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 428 (D.C. Cir. 1994); *see also Boivin v. US Airways, Inc.*, 446 F.3d 148, 155 & n.7 (D.C. Cir. 2006). This principle is "well established" and "serves several important purposes," including "preventing premature judicial interference with a pension plan's decisionmaking process" and permitting a "plan's own remedial procedures" to "resolve many claims." *Commc'ns Workers*, 40 F.3d at 432–33. Neither party contests it, *see* Pl. Reply [Dkt. 65] at 4, Def. Opp. at 6–7, and, for the reasons set forth below, the Court rejects Plaintiffs' two attempts to evade its application.

### A. Whether Administrative Exhaustion Is Excused Because Plaintiffs Allege a Statutory Violation

Administrative exhaustion is a non-issue, Plaintiffs argue, because the sole remaining issue upon remand derives from allegations of a *statutory* violation of ERISA. Pl. Mem. at 6–8. Accordingly, they argue, it presents a question that is wholly independent of plan interpretation and does not require pre-suit exhaustion. *Id.* The Court rejected this argument in the context of the First Motion for Class Certification, concluding that "[b]ecause Plaintiffs challenge the administration of the Plan and not just the legality of the Plan, they cannot rely on any 'statutory violation' exception to the exhaustion requirement.'" July 18, 2012, Order at 7 (citing *Kifafi,* 2004 WL 3619156, at *2).

In their second motion, Plaintiffs' claims, now set forth in the Fourth Amended Complaint, remain essentially the same. Now, however, Plaintiffs assert that they should prevail

7

because "two courts of appeals have determined" that this case involves a statutory violation, not a question of pension-plan interpretation.[4]  Pl. Mem. at 7.  They cite the Sixth Circuit and the D.C. Circuit's opinions in this case as authorities.  *Id.* at 6–7.  First, Plaintiffs rely on the Sixth Circuit's statement that "the pilots contend that the Retirement Plan violates ERISA due to its delay in payment of the lump sum and failure to pay interest on the amount once payment is tendered and they, facially, appear to have reasonable claims." *Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc.,* 464 F.3d 606, 613 (6th Cir. 2006).  Second, Plaintiffs contend that the D.C. Circuit's statement that "a pension plan could not satisfy ERISA by correctly calculating an actuarially equivalent lump sum, then delaying payment of that sum indefinitely" requires this Court to conclude that Plaintiffs' claim implicates a statutory violation.  644 F.3d at 440.

The Court has considered Plaintiffs' argument long and hard but concludes that it overreads the Sixth Circuit's opinion and misreads the D.C. Circuit's opinion.  The Sixth Circuit did not reach any conclusion or holding on the nature of Plaintiffs' claims.  *See* 464 F.3d at 613 n.3 ("Because this case is brought to this Court having been dismissed based on subject matter jurisdiction, we need not and cannot decide the merits of the pilots' claims.").  That court only decided that Plaintiffs' allegations of ERISA violations implicated both the Plan's written terms and an alleged oral amendment to the Plan instead of just the oral amendment.  *Id.* at 613.  The D.C. Circuit's controlling opinion likewise is unhelpful to Plaintiffs.  That court expressly held that US Airways' lump sum payments were actuarially equivalent to annuity payments and, thus, did *not* violate ERISA.  644 F.3d at 440 ("[US Airways's] late payment of Plaintiffs' lump sums

---

[4]  Courts are divided on whether the exhaustion requirement applies to claims asserting statutory violations, and the D.C. Circuit has not addressed it.  *See* July 18, 2012, Order at 6 n.5.  Plaintiffs cite several cases for the proposition that the "exhaustion requirement does not apply to claims asserting statutory violations."  *See* Pl. Mem. at 8.  The Court assumes without deciding, as it did in the context of the First Motion to Certify Class, that exhaustion is not required when a plaintiff alleges that a plan, as written, violates ERISA.

does not violate § 1054(c)(3)."); *see also id.* at 442 ("The amount of Plaintiffs' lump sum benefit was equal to the actuarial present value of the annuity payments Plaintiffs would have received under the Plan's default payment option."). It then articulated a standard of reasonableness to gauge how long a delay might extend between a retiree's commencement date and his lump-sum payment, dependent on specific fact-finding for which the case was remanded. *Id.* at 440–41 ("U.S. Air's 45–day delay in paying Plaintiffs was unrelated to the calculation of Plaintiffs' benefits, and therefore not reasonable under existing IRS regulations. We therefore remand to the district court to calculate the appropriate amounts due Plaintiffs.").

In the discussion leading to the standard of "reasonable" delay, the controlling opinion contrasted a "reasonable" delay with an "indefinite" delay, which would violate ERISA. *Id.* at 440. However, it defined "reasonable" in the first instance by reference to an IRS regulation, 26 C.F.R. § 1.401(a)-20 (Question & Answer 10(b)(3)), not the ERISA statute. 644 F.3d at 440. The D.C. Circuit further stated that any delay attributable to "administrative necessity" would be reasonable, and Judge Brown suggested that "approximately one calendar month" might be excusable in this case. *Id.* By the terms of the Circuit's remand, it is not yet clear what a "reasonable" period in the circumstances of US Airways' payments would have been; that question depends on fact-finding and decision. Because the D.C. Circuit has held that the lump sum payments made here were the "actuarial equivalent" of the annuities and left only the issue of the reasonableness of the delay, the remanded issue pertains only to the practices of the plan administrator, not the statutory requirements of ERISA. *See Air Line Pilots Ass'n, Int'l v. Nw. Airlines, Inc.*, 627 F.2d 272, 276–77 (D.C. Cir. 1980) (distinguishing between claims of a violation of "the terms and conditions of the pension plan" and allegations of "the obligatory fiduciary standards of ERISA").

Because the issue now before this Court poses a question of plan administration and not a question of statutory interpretation or application, the common principle of pre-litigation exhaustion applies to all plaintiffs. *See Commc'ns Workers*, 40 F.3d at 431.

### B. Whether Exhaustion Is Excused Due to Futility

Plaintiffs argue in the alternative that "even if the exhaustion requirement applied, the Court should excuse the class members' failure to exhaust administrative remedies because doing so would have been futile." Pl. Mem. at 9 (citing *Commc'ns Workers*, 40 F.3d at 433). According to Plaintiffs, other pilots' efforts to exhaust their remedies "would have been futile because the Retirement Board's written rules, practices, and procedures bound it to the Stephens precedent." Pl. Reply at 5. This is not so, the PBGC argues, because "it is impossible to establish what the result of any appeal [to the Retirement Board] would have been, much less the results of multiple appeals," especially given that deadlocks of the four-person board were resolved by an "independent, neutral arbitrator to be designated by the Board in each case" as a fifth, tiebreaking vote. Def. Opp. at 9.

While futility is an exception to the general principle of exhaustion, it is "'quite restricted,' and has been applied only when resort to administrative remedies is 'clearly useless.'" *Commc'ns Workers*, 40 F.3d at 432 (quoting *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986)). The D.C. Circuit has emphasized that the application of the futility exception is "discretionary." *Id.* To invoke it, plaintiffs "must show that it is certain that their claim will be denied on [administrative] appeal, not merely that they doubt an appeal will result in a different decision." *Id.* (internal quotation marks omitted). Plaintiffs have not made that showing here.

Plaintiffs rely heavily on the declarations of Captain John Davis, a former chairman of the Air Line Pilots Association (ALPA) Local Executive Council 94 (Pittsburgh), who is "familiar with US Airways' policy with respect to the handling of grievances, arbitrations, and retirement board disputes." *See* Pl. Mem., Ex. D, First Davis Decl. [Dkt. 62-4] ¶ 3; *see also* Pl. Mem., Ex. E, Second Davis Decl. [Dkt. 62-5]. According to Captain Davis, the Retirement Board "always abided by prior decisions" to "resolve any subsequent disagreements on analogous issues." First Davis Decl. ¶ 4. Therefore, he is "certain that US Airways and the Retirement Board would have treated all claims for interest on delayed lump sum payments in a manner consistent with the Retirement Board Impartial Referee's decision in Mr. James C. Stephens' claim." *Id.* ¶ 7. Moreover, Captain Davis asserts, "if more than one pilot brought the same dispute to the Retirement Board, the company and ALPA discouraged additional filings of similar disputes by deferring consideration of the subsequent similar disputes until the initial matter was determined[, and the] Board decision rendered on the first pilot would then determine the resolution for all subsequent pilots with the same dispute." Second Davis Decl. ¶¶ 4–5. As further evidence that denial of Mr. Stephens's claim made other pilots' claims futile, Plaintiffs submitted a Letter of Agreement between US Airways and the Air Line Pilots Association providing that "[a]ll decisions of the [Retirement] Board shall be final and binding upon the Company, the Association and any other person having an interest in such decisions or actions." Pl. Reply, Ex. B [Dkt. 65-2] (Letter of Agreement) ¶ 1.6.

The shortcoming in Plaintiffs' argument is that, "[r]ather than speculating on the outcome if administrative procedures are pursued, a plaintiff must show that 'it is certain that their claim will be denied.'" *Cox v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters*, 603 F. Supp. 2d 23, 31 (D.D.C. 2009) (quoting *Commc'ns Workers*, 40 F.3d at 432; other

internal quotations omitted).  Plaintiffs attempt to cobble together Captain Davis's assertions about what the Board "would" have done with other pilots' appeals of the denial of interest on a lump-sum benefit, Second Davis Decl. ¶ 5, with documentary evidence that the Retirement Board treated like cases alike.  But, taken as a whole, their evidence essentially amounts to speculation as to how the Board would have decided other appeals; it shows neither that the Board viewed its denial of Mr. Stephens's claim as unconditionally prohibiting future claims nor that it absolutely refused to reconsider its decisions in subsequent cases.  Because the Retirement Board was a committee of two pilots' union representatives and two company representatives who used an independent fifth vote to break deadlocks, it stands to reason that a case after Mr. Stephens's could, in fact, have ended with a decision that the pilot was owed interest.  This is all the more true in light of the evidence submitted by the PBGC showing that the Retirement Board anticipated that "the 45 day issue would again be addressed outside of the Stephens case which will probably result in an additional arbitration."  Def. Opp., Ex. 1 [Dkt. 64-1], ALPA-05184 to -05186 (Retirement Board Minutes) ¶ 14.

Plaintiffs' exhaustion evidence does not "satisfy [the] strict futility standard requiring a *certainty* of an adverse decision."  *Commc'ns Workers*, 40 F.3d at 433.  This case, therefore, does not present the "most exceptional circumstances" in which the futility exception to the exhaustion requirement applies.  *Id.* (quoting *Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163, 168–69 (D.C. Cir. 1983)).  Mr. Stephens is the only pilot who exhausted his remedies under the Plan.  Only Mr. Stephens can pursue his claim here.

### IV.   CONCLUSION

Plaintiffs challenging a pension plan administrator's decision are required to exhaust their administrative remedies before filing suit.  Of the hundreds of members of the

putative class, only Mr. Stephens did so. He is differently situated from the other pilots in a way that makes him not "typical" as required by Rule 23(a)(3) as a prerequisite to class certification. Accordingly, Plaintiffs' Second Motion for Class Certification will be denied. A memorializing Order accompanies this Opinion.

DATE: December 7, 2012

                                                   /s/
                                    ROSEMARY M. COLLYER
                                    United States District Judge