**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES C. STEPHENS,** *et al.,*     ) | |
|        ) | |
|     **Plaintiffs,**     ) | |
|        ) | |
|     **v.**     ) | **Civil Action No. 07-1264 (RMC)** |
|        ) | |
| **US AIRWAYS GROUP, INC.,** *et al.,*     ) | |
|        ) | |
|     **Defendants.**     ) | |

## OPINION

Before the Court is a class action settlement, which the Court has found to be fair, reasonable, and adequate. To begin the timetable for payments to class members, the Court granted the parties' Joint Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for Approval of Attorneys' Fees and Expenses following a Fairness Hearing held on April 24, 2015. *See* Order [Dkt. 97]. The Court writes this Opinion to further explain its April 24, 2015 Order.

Class Counsel and Defendant Pension Benefit Guaranty Corporation (PBGC) agreed to a $5.25 million class action settlement to remedy claims of certain retired US Airways pilots. The Class consists of pilots who chose to receive a lump sum payment as a full or partial distribution of their retirement benefits, but who did not receive their lump sum payment on the first day of the month after the pilot retired (the Benefit Commencement Date). US Airways pilots who chose to receive their retirement benefits as a monthly annuity began to receive retirement payments on their Benefit Commencement Date. Pilots who chose the lump sum payment were typically not paid until 45 days after the Benefit Commencement Date and were not paid interest for that period. In 1997, Captain James Stephens filed an administrative claim with US Airways, arguing that the company was required to pay interest for the 45-day delay

1

under the terms of the US Airways retirement plan and the Employment Retirement Income

Security Act (ERISA), 29 U.S.C. § 1054(c)(3).  The extensive litigation that ensued is now

coming to a close.  The parties have reached a settlement on the final issue, which is, what period

of delay would have been administratively necessary and reasonable, and what percentage of

interest should be paid for such a delay.

## I. BACKGROUND

This case originated in the District Court for the Northern District of Ohio in

2000 and was appealed to the Sixth Circuit.  However, after US Airways sought bankruptcy

protection and the pilots' retirement plans were assumed by PBGC, the case was transferred here

in 2007.[1]  This Court dismissed the pilots' claims in part, 555 F. Supp. 2d 112 (D.D.C. 2008),

and then granted summary judgment to PBGC on the remaining claims, 696 F. Supp. 2d 84

(D.D.C. 2010).  The case has been to the D.C. Circuit and back, twice.  *See Stephens v. US

Airways Group, Inc.*, 644 F.3d 437 (D.C. Cir. 2011); *Stephens v. Pension Ben. Guar. Corp.*, 755

F.3d 959, 967 (D.C. Cir. 2014).  The first question before the D.C. Circuit was the propriety of

the airline's practice of taking forty-five days to calculate and issue lump-sum retirement

payments to pilots under the pilots' retirement plans.  *See Stephens*, 644 F.3d at 439–40.  Judge

Janice Rogers Brown wrote the controlling opinion of the D.C. Circuit, which rejected the pilots'

argument that a forty-five day delay violated the ERISA requirement that lump-sum payments be

the "actuarial equivalent" of an annuity payment.  *See Stephens*, 644 F.3d at 440.[2]  Instead, the

---

[1] As part of a bankruptcy proceeding, US Airways terminated the pension plan in 2003, and it was assumed by PBGC under ERISA.

[2] The opinion of Judge Brown for the Court, *Stephens*, 644 F.3d at 438–42, is controlling.  *See id.* at 442 n.1 (Kavanaugh, J., concurring) ("Judge Brown's opinion is the controlling opinion in this case because it presents the narrowest grounds of the opinions forming a majority." (citing

D.C. Circuit held, the necessary inquiry was whether Plaintiffs were entitled to interest during the delay, which was determined by "whether [US Airways's] 45-day delay was reasonable." *Id.* Concluding that the payment was unreasonably delayed and that Captains Stephens and Mahoney were entitled to some amount of interest, the D.C. Circuit remanded the case to this Court "to calculate the appropriate amounts." *Id.* at 441–42.  The Circuit did not decide the duration of a "reasonable" delay inasmuch as the three members of the panel did not agree.[3]

On remand, Captains Stephens and Mahoney pressed their rights to a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).  Plaintiffs' first motion for class certification, which derived from the Third Amended Complaint, was denied without prejudice on July 18, 2012.  *See* Order [Dkt. 54].  Plaintiffs' second motion for class certification, which derived from the Fourth Amended Class Action Complaint, was denied on December 7, 2012. *See* Mem. Op. [Dkt. 68]; Order [Dkt. 69].  In order to obtain a final appealable judgment, Captain Stephens settled his individual claim with PBGC and Captain Mahoney agreed to dismissal without prejudice.  The Court entered Final Judgment on August 3, 2013.  *See* Final Judgment [Dkt. 74].  The parties appealed again to the D.C. Circuit.  The D.C. Circuit again reversed, holding that individual class members were not required to exhaust administrative remedies before inclusion in a class in which Captain Stephens, a named plaintiff, had exhausted his administrative remedies.  *Stephens v. Pension Ben. Guar. Corp.*, 755 F.3d 959, 966 (D.C. Cir.

---

*Marks v. United States*, 430 U.S. 188, 193 (1977)).  Judge Brett Kavanaugh concurred in the judgment, *id.* at 442–44, and Judge Karen Henderson dissented in part, *id.* at 444–46.

[3] Judge Brown found that 30 days' delay was reasonable.  *Stephens*, 644 F.3d at 440-41.  Judge Kavanaugh concluded that the pilots "should receive interest for the full 45 days that [US Airways] delayed payment of their lump sum pensions."  *Id.* at 442.  Judge Henderson, however, had "no doubt that payment was 'reasonably' delayed" for 45 days and thus no interest was due. *Id.* at 444-45.

2014).  The D.C. Circuit further remanded the issue of class certification and the typicality of the class representatives' claim.  *Id.* at 967.  The mandate returned jurisdiction to this Court on August 19, 2014.  *See* Mandate [Dkt. 82].

Upon notice from the parties that they were negotiating a settlement based on anticipated class certification, the Court certified a class.  *See* Order on Class Certification [Dkt. 83].  The class certification was subsequently amended to substitute Captain John Davis as class representative for Captains Stephens and Mahoney.  *See* Order Amending Class Certification [Dkt. 88].

The parties filed a Joint Motion for Preliminary Approval of Class Action Settlement Agreement on November 19, 2014.  *See* Jt. Mot. [Dkt. 87] (Preliminary Mot.). Following a hearing, the Court granted the motion on December 19, 2014, preliminarily approving the settlement and the proposed form of notice, *see* Notice [Dkt. 87-2], and authorizing its dissemination to the Class.  *See* Order [Dkt. 91].  Class Counsel retained Gilardi & Co., LLC (Gilardi) to mail the Notice and compile the responses.  Following the Court's preliminary approval of the Settlement, Gilardi mailed 679 Notices.  *See* Joint Mot. for Final Approval [Dkt. 95] (Final Mot.) at 2; *id.*, Ex. B at 1.  Ninety-eight Notices were returned as undeliverable and Gilardi re-mailed 86 of those.  *Id.*  There have been no objections.  *Id.*  Only one member of the class, who preferred that his share of the settlement be distributed to charity or his fellow pilots, opted out.  *See* Final Mot. at 2.

The Court held a Fairness Hearing on April 24, 2015 to consider the parties' Joint Motion for Final Approval of Class Action Settlement, Dkt. 95, and Class Counsel's Motion for Approval of Attorneys' Fees and Expenses, Dkt. 93.  The executed Settlement Agreement is attached as an exhibit to the Final Motion, Dkt. 95-1 (Settlement).  Captain Davis, the Class

Representative, appeared by telephone in support of the Settlement.  No class member filed or appeared in opposition to the Settlement.

## II.  ANALYSIS

For the reasons below, the Court found the $5.25 million Settlement to be fair, reasonable, and adequate and found that Class Counsel, most notably the long-serving Jack Nickens of McGuireWoods LLP, is entitled to its requested award of attorneys' fees and expenses.

### A.  The Settlement

Settlement of a certified class action requires a court's approval.  Fed. R. Civ. P. 23(e).  Before granting its approval, a court has a duty to determine that the settlement is "fair, adequate, and reasonable and is not the product of collusion between the parties."  *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000).

A court "must strike a balance between a rubber stamp approval and 'the detailed and thorough investigation that it would undertake if it were actually trying the case.'"  *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007) (citation omitted).  Nonetheless, "the discretion of the Court to reject a settlement is restrained by the 'principle of preference' that encourages settlements."  *In re Black Farmers Discrim. Litig.*, 856 F. Supp. 2d 1, 30 (D.D.C. 2011).

In this Circuit, there is no single test for evaluating a proposed settlement under Rule 23(e).  *See In re LivingSocial Marketing and Sales Practice Litigation*, 298 F.R.D. 1, 11 (D.D.C. 2013).  District courts consider the facts and circumstances of the case, and "examine[] the following factors: (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of

5

experienced counsel." *In re Lorazepam & Clorazepate Antitrust Litigation*, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (collecting cases).  The Court addresses each factor in turn.

### 1.  Arms-Length Negotiations

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 55 (D.D.C. 2008) (internal citations omitted).  In this case, counsel for both parties have demonstrated their legal prowess before this Court and on appeal.  In addition, not only is Class Counsel Jack Nickens' skill evident from his years of work on this case, but he has substantial experience in litigating class action securities cases.

There is no whiff of collusion between the parties after these many years of litigation.  At the Fairness Hearing, counsel for both sides affirmed that there was no collusion, up to and including settlement negotiations.  The Court has observed that counsel negotiated hard and well on behalf of their clients.  Accordingly, the Court found that the Settlement was reached after arms' length negotiation, and that it was, therefore, presumptively fair, adequate, and reasonable.

### 2.  Terms of the Settlement in Relation to the Strength of Plaintiffs' Case

"Next, the Court compares the terms of the settlement with the likely recovery plaintiffs would attain if the case proceeded to trial, an exercise which necessarily involves evaluating the strengths and weaknesses of plaintiffs' case." *In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013). Some courts consider this factor to be the most important consideration when evaluating a proposed class settlement.  *See, e.g.*, *Trombley v. National City Bank*, 826 F. Supp. 2d 179, 195 (2011); *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) ("The court's primary task

[when considering a settlement under Rule 23(e)] is to evaluate the terms of the settlement in relation to the strength of the plaintiffs case.").

The Settlement provides that PBGC will pay $5,250,000 to settle this matter. *See* Settlement ¶¶ 2.1, 2.5, 3.7, 4.1. After accounting for attorneys' fees and costs, the Settlement represents a recovery of over 70% of the damages for the Class based on an administrative delay of 45 days at 6% interest, without prejudgment interest. If this case did not settle and were to proceed to trial, Class members would have to continue to wait for relief. As the parties note, "[e]ven if plaintiffs prevail at trial, that verdict might be appealed, resulting in even further delay to the final resolution of the case, and the time at which class members would receive any compensation." Preliminary Mot. at 12. At the Fairness Hearing, Captain Davis represented that approximately 10% of the class members passed away during the course of litigation. He stated that settling the case at this juncture is appropriate as a practical matter given the aging population of the Class. "[T]he delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties." *Luevano v. Campbell,* 93 F.R.D. 68, 89 (D.D.C. 1981).

Further, both parties agree that "there is risk in continuing with the litigation" because the "case involves highly-contested, novel claims which have been developed and litigated over the course of many years." Preliminary Mot. at 12. Since *Stephens v. US Airways Grp.*, 644 F.3d 437 (D.C. Cir. 2011) partially decided the merits of the class claim, the fundamental issue for settlement was the extent of damages. For settlement purposes, Class Counsel considered:

> the risk that not all assumptions would be resolved in Plaintiffs' favor. So, for example, the DC Circuit opinion suggested that the summary judgment record supported an administrative delay of 30 days, which would, by itself, reduce the class damages to a little

> more than $3,000,000. Moreover, if prejudgment interest of four
> percent were used, the total class damages were approximately
> $2,500,000, or one-half of the settlement amount.
>
> For all members of the Class, the total of lump sum payments was
> $577,646,448. Interest on this amount for 45 days at 6% simple
> interest (provided in the Plan) is $4,263,002. For 15 days interest,
> the total is $1,424,334. The other element of class damages is pre-
> judgment interest, the award of which is within the Court's
> discretion. Plaintiffs contended that six percent was the appropriate
> measure of prejudgment interest but lower percentages such as
> treasury rates are frequently used. At four percent compounded
> annually, the total for prejudgment interest for the entire class for 45
> days was $3,349,683. At six percent, the figure was approximately
> $6,000,000.
>
> The maximum recovery with the most favorable assumptions to the
> Class was approximately $10,000,000. The proposed settlement is
> more than 50% of the maximum recovery for the entire class with a
> maximum award of prejudgment interest.
>
> . . .
>
> To summarize, the Net Proceeds to the Class for a recovery based
> on 15 days at prejudgment interest of four percent and a reasonable
> award of attorney's fees would be $1,500,000. The Net Proceeds to
> the Class of the proposed settlement is at least twice this amount.

Preliminary Mot. at 13-14. Class Counsel repeated this analysis at the Fairness Hearing. Class

Counsel's assessment of the risks of continuing with litigation were accurate. The prior decision

of the D.C. Circuit almost certainly limited class members to recovery of interest to 15 days. *See*

*Stephens*, 644 F.3d at 440-41, 444-45 (J. Brown found 30-day delay reasonable and J. Henderson

found 45-day delay reasonable). The terms of the Settlement are eminently fair and reasonable

in relationship to the strength of the remaining disputes, which weighed strongly in favor of

approving the Settlement.

### 3.  Stage of the Litigation at the Time of Settlement

Courts next "consider whether counsel had sufficient information, through

adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success

and range of recovery." *Lorazepam*, 2003 WL 22037741, at *4.  A court should determine that a

settlement "does not come too early to be suspicious nor too late to be a waste of resource but is

rather at a desirable point in the litigation for the parties to reach an agreement and to resolve

the[] issues without further delay, expense, and litigation." *Meijer, Inc. v. Warner Chilcott*

*Holdings Co. III*, 565 F. Supp. 2d 49, 57 (D.D.C. 2008) (internal citation and quotation marks

omitted).

This case began in the District Court for the Northern District of Ohio and was

transferred here after PBGC assumed the pilots' retirement plan.  Over the long history of this

case, there has been extensive discovery (document production, depositions, and expert

witnesses), extensive motion practice, and three appeals.  There is no doubt that the parties had a

realistic assessment of their potential recovery and corresponding exposure.  The Court

concluded that the Settlement was reached at an appropriate stage in the litigation.

### 4.  Reaction of the Class

"The existence of even a relatively few objections certainly counsels in favor of

approval." *Lorazepam*, 2003 WL 22037741, at *6.  The class reaction appears to be

overwhelmingly positive.  As of the Fairness Hearing, the response rate had been over 86% and

there have been no objections to the Settlement.  The only member of the class to opt out did so

for personal reasons and did not object.  *See* Final Mot. at 2.  Class Counsel anticipates a final

acceptance rate over 90%.  At the Fairness Hearing, Captain Davis affirmed that the Settlement

is a "measured and fair conclusion" to this litigation, which he described as a torturous legal

journey.  This factor counseled in favor of approving the Settlement.

### 5.  Opinion of Experienced Counsel

Finally, the opinion of experienced counsel "should be afforded substantial

consideration by a court in evaluating the reasonableness of a proposed settlement." *Lorazepam*,

2003 WL 22037741, at *6.  Class Counsel believes that the Settlement is fair, adequate and reasonable.  Because Class Counsel is experienced in litigating and settling complex cases, including class actions, the Court credited his opinion.

After consideration of the terms of the Settlement, all papers filed in connection therewith, the arguments of counsel at the Fairness Hearing, the statements of the Class Representative, and the factors discussed above, the Court concluded that the Settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

**B.  Plan of Allocation**

As with the Settlement, the Court must "consider whether distribution plans are fair, reasonable, and adequate."  *Lorazepam*, 2003 WL 22037741, at *7.  The proposed method of allocation for each class member is as follows:

> Starting with the pilot's lump sum payment, and multiplying by the number of days of delay in payment (usually 45 days) at six percent simple annual interest, a damages figure is calculated for each individual member of the Class. That figure is then increased by the number of days from the date of payment to December 31, 2014, at six percent, compounded annually. This calculation is designed to account for prejudgment interest. The resulting figure is the numerator for a fraction in which the denominator is the sum of these figures for all members of the Class. That fraction is then applied to the "Net Proceeds" (settlement proceeds less attorneys' fee and expenses) to calculate each Class Member's share of the settlement.

> Any unclaimed funds will be distributed to claimants based on the same ratios, unless the total of unclaimed funds is less than $25,000, in which [case] the unclaimed funds will be donated to an appropriate Internal Revenue Code § 503(c) charity chosen by the Class Representative.

Preliminary Mot. at 6.

The proposed allocation plan is a rational approach to determining each class member's share of the net proceeds. No class member objected to it. The Court concluded that the plan of allocation is fair, adequate, and reasonable.

## C. Attorney Fees and Expenses

Finally, the Court turns to the attorney fees and expenses requested by Class Counsel. In accord with Fed. R. Civ. P. 23(h)(1), Class Counsel gave notice to class members that it would petition the Court for attorneys' fees in a range of $1.5 to $2.0 million and expenses incurred during litigation of $75,000 and would also request an allocation of $75,000 from the settlement proceeds for expenses incurred in administering the settlement. *See* Notice [Dkt. 87-2] at 1; Mot. for Atty Fees at 1.

### 1. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Courts have a duty to ensure that claims for attorney's fees are reasonable." *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007).

The D.C. Circuit has joined other circuits "in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Id.* "[F]ee awards in common fund cases may range from fifteen to forty-five percent." *Lorazepam*, 2003 WL 22037741, at *8. In evaluating fee requests, a court may also consider:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

11

*Lorazepam*, 2003 WL 22037741, at *8.

"Courts frequently use the lodestar as a cross-check on the propriety of fees awarded under the percentage-of-the-fund method, sometimes adjusting the percentage or the award upward or downward accordingly." *In re LivingSocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 15 (D.D.C. 2013); *see also In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 300 (3d Cir. 2005) ("[I]t is sensible for a court to use a second method of fee approval to cross-check its initial fee calculation."); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) ("[T]he lodestar remains useful as a baseline . . . we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage.").

Class Counsel sought approval for an award of $2.0 million for its fees.  Mot. for Atty Fees at 4.  Any fee award will be deducted from the total settlement amount of $5.25 million.[4]

Class Counsel's requested fee award is approximately 38% of the total Settlement, which is within the range of settlements in other common fund cases. *See Lorazepam II,* 2003 WL 22037741, at *8.  Class counsel submitted unredacted fee records from Nickens, Keeton, Lawless, Farrell & Flack (NKLFF) and McGuireWoods, the two firms in which Mr. Nickens has been a partner during this lengthy litigation. *See* Notice of Atty Fee Records, Ex. A [Dkt. 96-1] (NKLFF Fee Record) and Ex. B [Dkt. 96-2] (McGuireWoods Fee Record).  The unbilled fees from NKLFF and McGuireWoods total $2,044,072.25.  The NKLFF Fee Record reflects 1254.20 hours, recorded at hourly rates between $35.56 and $550 per hour, for a total of $490,602.75 in unbilled fees.  NKLFF Fee Record [Dkt. 96-1] at 56.  The

---

[4] The D.C. Circuit affirmed this Court's ruling that class members are not entitled to attorney fees from PBGC. *Stephens v. US Airways Grp.*, 644 F.3d 437, 441-42 (D.C. Cir. 2011).

McGuireWoods Fee Record reflects 2,986.10 hours, recorded at hourly rates between $85 and $950 per hour, for a total of $1,553,469.50 in unbilled fees.  McGuireWoods Fee Record at [Dkt. 96-2] at 55.  The fee records reflect the timekeepers' regular hourly rates.  *See* Mot. for Atty Fees. at 5.  Class Counsel confirmed that the rates charged were those in effect at the time the services were incurred.

Class Counsel argued that the $2.0 million fee request is reasonable because the $3.1 million in net proceeds will fairly and adequately compensate the class for their damages. There was a wide range to the class members' potential recovery.  Variables for settlement included the amount of prejudgment interest that could be awarded and the number of days of administrative delay.  In a worst case scenario, class members may only have been awarded half of the current Settlement amount.  Class members raised no objection to the proposed fee award. Finally, Class Counsel emphasized that it worked on a contingency basis with no assurances of recovery for eight years, in which there were extensive document exchanges, depositions, expert witnesses, extensive motion practice and three appeals.

Class Counsel noted that fees in similar matters would be based on the value of professional time plus a lodestar multiplier that can double or triple that amount, which Mr. Nickens agreed was not practical here.  Instead, Class Counsel's requested fee award is slightly less than the value of its recorded time, calculated by multiplying the hours billed by the timekeepers' posted rates.  At the Fairness Hearing, Class Counsel explained that no time was written off in this matter, but also that he did not report all of his time.  He further stated that he typically bills McGuireWoods clients at his posted rates and has only provided a client discounted rates on one occasion.

This case was highly complex and spanned more than eight years, in which Class Counsel labored on a contingency basis with risk of nonpayment. Class Counsel expertly navigated the ups and downs of the case, which included three appeals, and achieved an excellent recovery for class members. The Court found that Class Counsel was entitled to the requested amount of attorneys' fees and granted Class Counsel's motion for an award of $2.0 million attorneys' fees.

### 2. Litigation Expenses

"In addition to being entitled to reasonable attorneys' fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *Lorazepam*, 2003 WL 22037741, at *10 (quotations and citations omitted). Class Counsel sought $75,000 for litigation expenses.

Class Counsel incurred $69,952.33 in litigation expenses as of April 17, 2015. NKLFF incurred expenses of $49,312.52. *See* NKLFF Fee Record [Dkt. 96-1] at 59. McGuireWoods incurred expenses of $20,639.81. *See* McGuireWoods Fee Record [Dkt. 96-2] at 66. Class Counsel reasonably expended the claimed amounts. To reimburse Class Counsel for incurred fees and to account for any subsequent litigation fees, the Court granted Class Counsel's request for $75,000 in litigation fees.

### 3. Administrative Expenses

Finally, courts may approve payment for expenses associated with administering the settlement where class members had notice that such expenses would be paid out of the settlement fund. *See, e.g., In re Crocs, Inc. Securities Litigation*, 2014 WL 4670886, at *6 (D. Colo. 2014) (approving reimbursement request where Notice informed class members that Plaintiffs' Counsel would request reimbursement on behalf of Claims Administrator from the Settlement Fund for administrative expenses and no class member objected); *RMED Int'l, Inc. v.*

14

*Sloan's Supermarkets, Inc.,* 2003 WL 22251323, at *2 (S.D.N.Y. Sep. 30, 2003) (approving payment from settlement fund to claims administrator where class members had notice that administrative fees would be paid out of settlement fund).

Class members were notified that Class Counsel planned to seek for a maximum of $75,000 for settlement administrative expenses. *See* Notice [Dkt. 87-2] at 1; Mot. for Atty Fees at 6. Amounts not expended for administrative purposes will be distributed to the class members. Because the request is reasonable and no class member objected, the Court agreed.

### III.  CONCLUSION

For the reasons above, the Court granted the parties' Joint Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for Approval of Attorneys' Fees and Expenses. *See* Order [Dkt. 97].

Date: April 30, 2015

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
